All right, and our final case for this morning is B.T. Bourbonnais against Norwood, and we will hear first from Mr. B. Schott. Is that close? Oh, very close. Yes, Schott. Or Bizet is fine. Frank works too. May it please the Court, I represent the Director of the Department of Health Care and Family Services, Felicia Norwood. This Court should reverse the denial of Norwood's motion to dismiss for two reasons. First, because the provision in the Medicaid Act at issue here, subsection A13A, does not confer any federal rights, whether substantive or procedural, that are enforceable under section 1983. And secondly, because the relief plaintiffs are seeking is barred by the 11th Amendment. So I want you to start with the procedural rights, because it does say that there has to be a public process, and it does single out providers as people who are to be given this reasonable opportunity. So that's pretty specific, and I can well imagine that the public process would put the provider in the position to make a submission to CMS, the Center for Medicaid and Medicare Services, to find out what was in the way. So something entirely nonjudicial, but something that would be a very important right for them to have, that's the point of a process, just as we know in Goldberg against Kelly, process counts. And so why is there no federal right to an appropriate public process? Well, two reasons. The first is that the public process provision is directed at the states primarily. It tells the states what they have to do. But it makes it clear that the beneficiary of the process, to use this language, the party who has the duty to do something is the state. Correct. But it's being done for the benefit of the providers, beneficiaries, and their representatives, et cetera. And I would just stick with the facts of this case and say providers. And that's exactly what the Supreme Court says should happen in cases like Gonzaga or other cases. It's for whose benefit is this? Correct. It's for the provider. Well, it's not. It's not for the state. The state doesn't want to process. The state would be perfectly happy with no process at all. Right, but it's not clear that it's for the process of providers than, for example, recipients. Why not? Because it says in 13A.2, provide for a public process, providers, beneficiaries, and their representatives. They're singled out. Well, it's important to read those words in the context of the provision as a whole because the Supreme Court says you look at the text and the structure of the provision at question. And up front, the party being addressed in 813A is the state. It tells the state you have to make your process public. It's a public process. That's what it's called. But, again, I mean, I agree with that. I mean, there it is. Of course, it's the state's duty to do that. But the state has to do that to go back to Wilder back when the language was different. I know this has you have other argument about this. If it says a state plan must provide reasonable reimbursement, it would, again, be the state. Correct. It had the duty, but there would be a substantive standard. Actually, that substantive standard is still there in the regulations, but I'm not going to worry about that right now. Right. But, anyway, your only argument is because it's the state that has to provide the process, nobody has an interest in it? No. It goes to this specific provision. So, comparatively, there are other provisions in the Medicaid Act which have been found to confer. So you're not saying that just because the state has to provide the process, no one has an interest in it? Correct. Who does have an interest in the process? Well, recipients or the public, some provisions aren't clear. That's why some provisions in the Medicaid Act which do require the states to do something have been found not to confer enforceable rights on anybody because it's not clear that there's a special class who this provision is entitled. But if we were to find that little two does single out a special class, then that would solve at least that problem with this case. Well, if it singles out a special class as a beneficiary. Right. There's two different ways that ambiguity or the word unambiguous can be used. There's the context of whether statutory is unambiguous, then you don't have to look at any other sources for statutory interpretation. So is the language clear? But that's not how unambiguous is used here. It's whether it unambiguously confers a right. So just because the state can easily identify who's supposed to be included in this review and comment, that doesn't go far enough to show that this public process was enacted specifically for the benefit of providers rather than just to improve the efficiency of the system as a whole and that the providers, they may indeed obtain some benefit, an indirect benefit, but not every party who benefits from a statute has an enforceable right under Section 1983. Well, we know that it's not a personal right from the language when read as a whole because the provision directs the state plan to include this public process, and it gives four distinct reasons for that public process, one of which is to give the entire universe of interested persons an opportunity for review and comment. Correct. And it lists that entire universe as providers, beneficiaries, and their representatives, and other concerned state residents. Any interested party has an opportunity. That's clearly not a personal right or individual rights granting. It's not stated in terms of an individual right as the free choice of provider provision, for example, in the Planned Parenthood case, which was phrased in patient-centric terms. Correct. This is anybody who has an interest in this public process has a right to be heard. Correct. It's very generalized language, which is distinct from the individualized rights-creating language that Gonzaga requires. And, again, just because providers are among those listed and it's clear that maybe they would have the opportunity to comment, just being able to identify somebody who may obtain some benefit from a statute isn't enough to create an enforceable right. Well, this is more than that, surely. The providers are singled out. That's why I think we need to be careful about the exact case that's in front of us. Correct. We don't have a case in front of us where some random person on the street has come in and said, I'm a concerned state resident. Correct. I agree that such a person might not have an enforceable right, but they're not the same as a provider, a beneficiary, and the representatives that we have. We have providers here. But those are just listed within the context of a generalized public process. It's one of the components. It's not a very specific class as it is in other statutes, and the statute could have been worded differently to put providers right up at the front of A13a and say a provider shall have a reasonable opportunity to review and comment or something along those lines. You would have a much more clear case here. It says must, a state plan must. There's no big difference between must and shall. I think what I was trying to say is that it's more where this list comes up. This list comes up in the second of three components of what constitutes a public process after the statute says you must conduct a public process. We have a procedural question that's really probably more the court's problem than it is your problem in this case, which is the fact that the Supreme Court has never overruled Wilder against Virginia Hospital. I recognize that your argument is, oh, Wilder was talking about one version of the statute with the Boren Amendment. Now we have a different version of the statute. Sometimes, though, if you look at something like state oil against Khan, there's been a lot of change, and yet as a lower court, actually the same thing happened in the McDonald case. As a lower court, even if we think the Supreme Court might do something different, we are not at liberty to say. We've just decided not to follow a Supreme Court decision. Well, we're not asking this court or the district court not to follow Wilder. Well, yes, you are, because Wilder dealt with this subsection of the statute. But it dealt with drastically differently. I know, I just said it dealt with the Boren Amendment, fine. But to the extent that this is a section of the statute that is still there, it's changed a substantive right into a procedural right. That's why I wanted to focus on the procedural right as opposed to anything substantive. So I'm just going to say I think that's a problem here for us. Well, I mean, I think what this court can say is just that Wilder recognized and held that 813A used to provide a substantive right. It doesn't anymore because Congress repealed that language about reasonable and adequate rates. None of that is in the statute anymore. And so Congress intended for 813A now to mean something different. What it means now is. Now it gives a procedural right. Well, it gives a procedural directive to the state. The question is whether or not that directive rises to the level of an enforceable right. But I think that's the distinction the court can make. And in Bontrager, the court, you know, first of all, Bontrager involved a different provision. It was 810A. And Bontrager just said prior Seventh Circuit decisions, Miller was the case in there, that case, that relied on Wilder's analysis aren't automatically overruled or have lost their precedential value just because the court took a more stringent approach in Gonzaga than in Wilder. That's all the court said and meant in Bontrager. So Wilder and Bontrager don't support plaintiffs' argument that the statute now confers a substantive right even though the language has completely changed from the language that the court considered in Wilder. Because otherwise then Congress's change in language wouldn't, you know, mean a whole lot if it didn't matter. Mr. Pizak, if the statute just spoke about hospital services and concerns state residents, I'd be more sympathetic to your approach. But we've got two textual references. I mean, it's not just the providers. We've got the nursing facilities services. What should we say in the kind of opinion you would like us to write about reading those text references out? I would say that just the text considered within the structure of that subsection. Yeah, I understand. It's just not clear enough, I would say. Under your argument, what if we listed seven other entities? Would you still say all of those entities would be, let's say, people who provide linen services to these facilities? All that should be read out. It's not reading it out. It's just saying that because it is important, I just want to make one point, that the backdrop of all this is the suspending clause litigation. And so the usual remedy for a violation of a spending clause legislation, not litigation, sorry, is for the federal government to withhold funds, withholding of federal funds. To be able to sue under Section 1983 is an exception to that general rule, which is why the court requires something very clear and unambiguous so the states know what they're getting into, that they may be subject to one of these suits in the future. And so if the court looks at this and says, well, it reasonably could be read to be directed at the benefit of this class, but maybe not. I mean, any ambiguity at all under the Supreme Court's analysis in Gonzaga renders the absence of an enforceable right.  But looking at the statute as a whole, these providers, nursing home facilities, are a major entity in this process. But for the ultimate benefit of recipients. I mean, the Medicaid Act exists to provide medical services. Well, I don't know. Maybe Congress has in mind a support for the industry. I don't know who lobbied to put the language in or out, if anyone. But are we to read out any possibility that that's what Congress had in mind? Because, for example, if you have these hearings, you can lower the costs. Correct. As well as raise them. I mean, there's the potential, I suppose, for the arrow to go both ways. It is. But I guess I would just go back to it has to be unambiguously clear. We're not reading this out, asking you to read anything out of the statute. We're just saying that to the extent that they're alleging we didn't comply, that's not something that's brought in Section 1983. I see I'm running into my rebuttal. You may save time. Yes. Thank you. Mr. Welch. Good morning. May it please the Court, my name is David Welch, and I do represent the plaintiff at Belize. I want to start you, actually, Mr. Welch. I want to jump to sort of the other issue, because I'm concerned that, you know, reading your complaint, here are two things about your complaint that concern me. One is that reading quite a few paragraphs of the complaint, what I see are references to the Illinois Administrative Code. I don't see references to federal law. And the other thing that worries me is what I guess I'm going to finally have to call the ambiguity in my own mind about the remedy you're looking for. I can understand the idea of a remedy that would be a prospective injunction against Director Norwood to start holding hearings, because that doesn't sufficiently engage the state's budget, you know, or treasury to create Eleventh Amendment problems. There are plenty of injunctions that look like that. You, however, have wanted, you know, this injunction to be retroactive to July 1, 2013, and that sounds an awful lot like money to me, you know, a hearing that's going to say what should the reimbursement rate have been in July 2013, and then that actually certainly would yield money payments. And I don't know if a backward-looking injunction, indeed I have real concern about whether a backward-looking injunction is compatible with the Eleventh Amendment. So as I say, I can certainly in my own mind envision an injunction that says start holding hearings, but I don't think that these hearings or that there would be a way compatible with the Eleventh Amendment to get effectively back pay. Your Honor, I would suggest, taking the second question first, if I may, I would suggest to Your Honor that the retroactive effect, if you will, of the mandatory injunction that we seek really only relates to the facts as they existed in July of 2012 when the change in ownership occurred. That change in ownership under the statute is what gives rise to really the real need to be able to review and comment on the public process because the rates should change based upon the cost reports for these particular providers. So would you be willing to say that the data is 2013 data, but you would recognize that any reimbursement based on a new formula would only be a prospective consequence of the hearings? What I would say is this, Your Honor, is that the injunction would apply prospectively, and to the extent that the findings establish that rates should have been different than they were in the past, that would perhaps identify an additional claim that could be brought by the plaintiffs at a different time, in a different action, perhaps even in a different form. I can't see how under the Eleventh Amendment. I don't think this is necessarily a problem with the whole case. I mean, it may be that you've just overreached and you can't get as much as you thought you could get. But I don't know whether you would take a rate determination like that and go straight to CMS, whether there's some process that nursing homes and other beneficiaries have under this spending legislation. But I do think that the state makes important points when it raises the Eleventh Amendment argument to the extent that people are throwing around the number $12 million and it looks like maybe it's just a way to try to get a back reimbursement award. Your Honor, let me be clear. In no way are the plaintiffs seeking any damages, any back reimbursement claim, or anything in the context of the action that is pending in the district court. What they are stating is that the action that is pending and the right to a mandatory injunction so that we can get the public process to be able to review and comment is based upon facts that began to arise in July of 2012 with the change of ownership. Depending upon what the public process establishes and what the rates are, there may be other things that may flow from that that would be outside this litigation. What we're looking for is an injunction that requires that process that should have been held a long time ago to be held today. How is that not retrospective relief? It's not retrospective relief. It is relief going forward based upon facts that arose earlier. We were a change in ownership. It's a hearing right now with data. Yes, I would agree with Your Honor. Ms. Walz, are you just simply asking there be recognition that there's a change of ownership? Yes, sir. So it doesn't matter what the date is. The date is relevant only because that's a date when ownership changed. Correct. So you're setting apart a claim of that date being relevant for damages going back. You're just using it as a baseline for the fact that a change of ownership occurred. Correct. If we were to have a public process today that started with facts starting today going forward, there's no change of ownership issue because that happened in 2012. Right. So I think Your Honor used the phrase baseline. I would agree. It's a baseline date to measure and produce the data that gives rise to the results of the public process. Well, is there any dispute between you and the state that a change of ownership has occurred? It's hard to tell, Your Honor. Well, if there isn't. It certainly would be outside the record. There clearly is. Well, there must be filings for licensure purposes, right? Well, yes. I meant outside the record of this litigation. But, I mean, there are clearly there were new licenses issued. There were sale documents done. Well, I guess my point is if there's no disagreement that there's a change of ownership, why would injunctive relief be necessary with regard to establishing that? Because it's not establishing the change of ownership creates the right to have your rate established. I appreciate that. And that's the step that you say never happened. Never happened. There was a change of ownership, but there was never revisiting up or down of the rate. I mean, I understood from the record that you assert that, you know, maybe there's better electronic case management, you know, or patient management information now. There could be some cost savings vis-a-vis the new owners. I don't know if there are, but that seems to me we just don't know. But what worries me is if once you get that new rate, I don't see myself how compatibly with the 11th Amendment it could be anything but prospective from whenever the hearing is finished. And I would agree with Your Honor in the context of this proceeding that if a mandatory injunction issues to require the public process to be able to establish rates based upon a change in ownership that occurred in 2012, providing the providers with an opportunity to review and comment and complete the rest of the process required by the statute, there will be a rate established emanating from that process, from that hearing, if you will. Right, and that rate will apply only in a forward direction. Correct. It will not touch the state's treasury in a backward way. No, ma'am. Why did you request an injunction retroactive to July 1, 2013, then, to establish and process the appropriate reimbursement rate in a look-back way? Again, I guess what I would say to Your Honor is that perhaps it would have been more artfully drafted. So you're disclaiming that claim right here as you stand here. I am disclaiming the fact that the process we seek is a rate to be established that would be effective as of July of 2012. The rate would be established currently based upon facts that arose as of July 2012. So you are disclaiming any effort in this case, or any claim in this case, to recoup reimbursement retroactively owed. In this litigation, correct. So you don't want that $12 million back? That's not what I said, Your Honor. What I said was in this litigation we're not looking to get that $12 million back. I don't know what the state is going to determine. I don't know if the rate is going to be higher or going to be lower. I don't know if the state on its own is going to say that the rate should have been different than it was. All I'm saying is that when we have the process and the rate is set, to the extent that any claims arise in favor of the plaintiffs that emanate from finally getting that public process heard, we will certainly reserve our right to deal with those claims in another action, and I would suggest most likely in another forum, but it's not part of this litigation. Okay, so you're withdrawing your request for a retroactive injunction, which is a contradiction in terms. Yes, Your Honor. I would say that what was really meant was that we were looking for a prospective, mandatory injunction requiring the process now with facts that begin arising. You just want to be able to prove that the change of ownership happened when it did. I mean, I would take this as, you know, I don't know whether it's a half a loaf you'd rather get, but the Eleventh Amendment does stand in your way of retrospective relief, but maybe you'd rather have it fixed going forward as opposed to nothing. Your Honor, it's a step in the process. It's a step in the process that we've never been afforded, and if we get that step in the process, I believe it was Your Honor said there's risk involved in this, and the risk is the rate may actually be lower. No, Judge Baum made the same point. And we understand that, but it's more important to us to assume that risk and get the benefit of the statute with the right to participate from a review and commentary standpoint so that whatever the rate is, it is fairly set. There's been no fairness in the setting of this rate at all. Right. You can get that relief in state court, right? Once a rate is set, yes. We have to have the ---- Well, no, I mean you could go to state court. If we were to say that this statute doesn't create enforceable individual rights, then you can just go to state court and make this identical claim for a violation of the state law and get everything you're asking for here, retrospective and prospective. If the ruling by this Court is that we have no enforceable right under the federal statute under 1983, we certainly would have to ---- we're just not going to roll over and play dead. We're going to have to take a look at what else we can do. And if your ruling makes it ---- Well, right, as your complaint and your argument here is rife with, there are all kinds of state requirements, state law requirements that you allege were violated here. Well, I disagree with Your Honor only from the standpoint that what we complain about with respect to our state rights are the items out of the Illinois Administrative Code that goes into the implementation of the federal statute. That's the way they work together. It's not a separate set of state rights and federal rights. There are state regulations that implement the federal statute. Enforceable in state court with no Eleventh Amendment problem. I'm not so sure that there is a cause of action under the Illinois Administrative Code. Your Honor, that ---- Well, that was what I was going to ask. Is it clear that you could make this right to a public hearing claim that you're making under Subpart 13, capital letter A, in state court, or if our court were to say there is no private right, would the state courts simply follow suit? Your Honor, I think you hit it right on the head. If we strike out here, I'm not certain that a cause of action exists in the state court because we're talking about regulations that are imposed upon the director to implement the federal statute. We can't sue under those. If Your Honor has any more questions, I'd be happy to stay. Otherwise, we would ask that you affirm Judge Shader's ruling. All right. Thank you. Thank you. Anything further, Mr. Beasley? Just a couple of things. First, just to clarify on the 11th Amendment issue about what an injunction going forward would look like, I'd just like to clarify, which I think this Court has already said, but I just want to make sure of that, it would be for that whatever process would result in a rate from, that applies this date forward rather than a rate that applies back to August 1st because that's what they're asking for in their complaint and Judge Shader's decision. Which they now are saying, and we will take them at their word, they are not asking for. Correct. Okay. On to some of the state law issues that were just discussed. I don't want to give the impression that Norwood is conceding or admitting that we didn't comply with the public process provision. If this case were to get remanded for further proceedings on that question, we would present evidence showing that we did provide them with the public process that's required under, you know, 813A if there is a federal right, that, you know, there has been an explanation for why they didn't get the rate adjustment. The question isn't whether or not there is a change in ownership. You can stop me if I go too far in Illinois law. But the question isn't whether there has been a change in ownership, it's when it occurred. There's been a rate freeze on rates since 1994, and so then you can apply for various different adjustments. One rate adjustment is for changes of ownership that occurred between 1992 and 1994. So the question, the underlying Illinois law issue, comes down to when the change in ownership occurred. Whether or not it's a change in ownership doesn't matter if it occurred in 2012 rather than that two-year period. Right, and I assume that there are state law remedies and rights of judicial review for alleged errors of this sort in the calculation of the reimbursement rate. Right, that would be my third point, is that the administrative review law exists to review final decisions made by any Illinois agency now. Maybe they wouldn't have a claim now because the decision was made at some point in the past. I don't know. I don't want to get too much into that because I'm not entirely sure. But there are state law remedies if an administrative agency has made a final decision that you want to challenge the administrative review law exists to take back claims. Mr. Bieseck, just so I'm clear. Sure. Is there any dispute between the parties on whether a change in ownership occurred? Let's not talk about date. Just as we are here today in this forum, is there any question about that? I'm not entirely sure because I think what the state, and none of this is an argument, but I think what happened is once the department looked at the date, they said, well, it doesn't apply whether or not there even was a change in ownership. So I'm not sure they even ever made it to that second question. They just looked at the date and said, even if this is a change in ownership, it doesn't fall within what's required for the rate adjustment, and that's that. And, again, if this were to get remanded, we would put on evidence showing that we complied with everything that's required of us. So unless there are any further questions, we would ask that you reverse. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement, and the court will be in recess. Thank you.